UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GUARDIAN ALARM COMPANY
OF MICHIGAN and GUARDIAN
MEDICAL MONITORING, INC.,

       Plaintiffs,

                                CASE NO. 06-CV-13721-DT
                                JUDGE PAUL D. BORMAN
                                MAGISTRATE JUDGE PAUL J. KOMIVES

   v.

JEFFREY S. PROUGH and
CRITICAL SIGNALS
TECHNOLOGIES, INC.,

       Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ANSWERS AND COMPLETE RESPONSES TO FIRST SET OF DISCOVERY REQUESTS (Doc. Ent. 40) and GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS (Doc. Ent. 53)**

**I.**     **OPINION**

**A.**     **Background**

Jeffrey S. Prough was terminated from employment with plaintiffs on October 4, 2005. Doc. Ent. 1 at 3 ¶ 8; Doc. Ent. 9 at 3 ¶ 8. In the summer of 2006, "Prough began working to start a new medical monitoring business known as Critical Signal Technologies, Inc.[.]" Doc. Ent. 58 at 7.

Plaintiffs filed their original complaint on August 21, 2006. The following day, plaintiffs filed an ex parte motion for preliminary injunction and temporary restraining order. Attached to that motion is an unsigned copy of Guardian Security Services "Covenant Not to Compete." Doc. Ent. 3 Ex. C; Doc. Ent. 24 Ex. 2.

On August 30, 2006, plaintiffs Guardian Alarm Co. of Mich. (GAM) and Guardian Medical Monitoring, Inc. (GMM) filed an amended complaint against defendants Jeffrey S. Prough (Prough) and Critical Signal Technologies, Inc. (CST) alleging (I) trademark infringement (with respect to the "Virtually There Care" mark);[1] (II) unfair competition; (III) dilution; (IV) violation of a non compete agreement; (V) violation of non solicitation; (VI) breach of fiduciary duty; (VII) conversion and (VIII) claim & delivery.

Prior to October 4, 2006, the date the alleged non-compete would have expired, "CST . . . had no sales or revenue of any kind[.]" Doc. Ent. 58 at 7.  On October 19, 2006, Judge Borman entered an opinion and order denying plaintiffs' motion for a preliminary injunction. Specifically, Judge Borman stated inter alia that "[t]here is a substantial factual dispute as to whether Defendant Prough ever signed a non-compete clause with Guardian[,]" "Plaintiffs have not met their burden of proof as to the existence of the non-compete agreement[,]" and "Plaintiffs have not alleged that granting a preliminary injunction in this instance will prevent any harm to the public or to others."  Doc. Ent. 25 at 10, 17.

On December 20, 2006, Judge Borman entered a stipulated order of permanent injunction providing that "[d]efendants are hereby permanently enjoined and restrained from any further use of the phrase 'Virtually There Care.'" The following day, Judge Borman entered an order (1) granting defendants' motion to dismiss counts VI, VII and VIII and (2) denying defendants' motion for summary judgment in counts IV and V.  Therefore, the remaining counts are I-V.

Plaintiffs and defendants have filed motions to compel.  (Doc. Entries 40 & 53).  Judge

---

[1] Guardian Virtually There Care is "[a] camera and software system that enables remote visual supervision of a loved one or patient."  *See* www.guardianmedicalmonitoring.com, "Remote Viewing".  *See also* Doc. Ent. 58-4.  "'Virtually There' Care" appeared in defendants' advertisement in a conference program for the "n4a 31st Annual Conference & Tradeshow" in Chicago, Illinois during 2006.  Doc. Ent. 58-3.

Borman has referred these motions to me for hearing and determination. (Doc. Entries 50 & 54). The hearing on these motions was scheduled for April 2, 2007. (Doc. Entries 52 & 57). On April 2, 2007, I held a hearing on these motions. Attorneys Thomas R. Paxton and Mark E. Shreve represented plaintiffs and attorney R. Christopher Cataldo represented defendants. Following oral argument, I took these motions under advisement.

**B.     The Lanham Act**

The Lanham Act is codified at 15 U.S.C. §§ 1051-1141n. Section § 1117 ("Recovery for violation of rights") provides in part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover *(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action*. The court shall assess such profits and damages or cause the same to be assessed under its direction. *In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.* In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a) (emphasis added).

Section 1125 of the Lanham Act concerns "[f]alse designations of origin, false descriptions, and dilution forbidden." Subsection (a) provides in part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading

description of fact, or false or misleading representation of fact, which–

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  Subsection (c) provides in part:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1).

**C.     Fed. R. Civ. P 26(b)**

Fed. R. Civ. P. 26(b) governs the scope and limits of discovery.  Generally, it provides:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.* All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii).

Fed. R. Civ. P. 26(b)(1) (emphasis added).

> "Generally, Federal Rule of Civil Procedure 26(b) enables parties to discover any

4

unprivileged evidence or information relevant to their claim." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. Jan. 18, 2007) (citing Fed. R. Civ. P. 26(b)(1)). "However, district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson*, 474 F.3d at 305 (citing Fed. R. Civ. P. 26(b)(2)). *See also Fannin v. Baltimore & O. R. Co.*, 253 F.2d 173, 177 (6th Cir. 1958) ("Rule 26(b) is broad in coverage, in that, under it, a deponent may be examined with respect to 'the identity and location of persons having knowledge of relevant facts;' and it is not ground for objection that the testimony will be inadmissible at the trial, if the testimony sought appears reasonably calculated to lead to discovery of admissible evidence.").

**D.      Defendants' motion to compel answers and complete responses to first set of discovery requests is granted.**

**1.**     On or about November 28, 2006, defendants served first interrogatories (Nos. 1-5) and requests for production of documents (Nos. 1-4) to plaintiffs. Doc. Ent. 40-4. Defendants' interrogatory Nos. 3, 4 and 5 are at issue:[2]

> 3.      Itemize all damages that you are seeking to recover because of Defendants' use of the phrase "Virtually There Care" as alleged in the complaint. Your answer should specify the exact amount of the alleged damages by category, state the date the damages were incurred, and further explain in detail how each item of damages resulted from Defendants' use of the phrase "Virtually There Care"[.]
> 4.      Identify each and every customer of Guardian Medical that cancelled or terminated business from Guardian Medical and moved or transferred its medical monitoring business to CST at any time from October 4, 2005 [the date of defendant Prough's termination of employment] through October 4, 2006 [one year from the date of defendant Prough's termination of employment].

---

[2] Defendants reply that "[t]he answers to Interrogatory Nos. 1 and 2 are acceptable." Doc. Ent. 51 at 2 ¶ 1.

> 5. Itemize all damages that you are seeking to recover pursuant to Counts IV or V of the complaint. Your answer should include a detailed description of the nature of the damages sought, the amount and date that the damages were incurred, and a detailed description of all facts that you will rely upon to allege that these damages are recoverable under Counts IV or V of the complaint.

Doc. Ent. 40-4 at 8-9.

On or about December 28, 2006, plaintiffs served answers to defendants' first interrogatories and responses to defendants' requests for production of documents. Doc. Ent. 40-3. As to Interrogatory No. 3, plaintiffs responded in part that "discovery is still ongoing and Plaintiffs are attempting to determine the amount of damages[.]" Doc. Ent. 40-3 at 5. As to Interrogatory No. 4, plaintiffs responded in part that the question "is in direct contradiction to the damages permitted under the Lanham Act 15 U.S.C. § 1117 which includes Defendants' profits and any damages sustained by the Plaintiffs, and any cost of the action." Doc. Ent. 40-3 at 5. As to Interrogatory No. 5, plaintiffs responded in part that it is overbroad; however, they also mentioned "damages arising from CST's and Prough's attempt to solicit Guardian employees including Thomas Reddy [Guardian's former Information Technology Director][3], Jeff Kipp, and Diane Gooding, all of whom are subject to non-compete agreements as known by Defendant Prough." Doc. Ent. 40-3 at 6.

Defendants' requests for production of documents seek:

> 1. All Documents that refer to, relate to or reference Jeff Prough.
> 2. All Documents that refer to, relate to or reference CST.
> 3. All Documents that in any manner evidence or support your claim for damages in Counts I-III of the First Amended Complaint.
> 4. All Documents that in any manner evidence or support your claim for damages in Counts IV or V of the First Amended Complaint.

---

[3]Doc. Ent. 61 at 2 n.1.

Doc. Ent. 40-4 at 9. To each of the requests for production of documents, plaintiffs responded in part that the requests were "vague, non-specific, overbroad, and [could not] be responded to in the present format." Doc. Ent. 40-3 at 9-10. According to defendants, plaintiffs did not provide documents, and they "did not supplement their responses to the documents requests or produce any documents." Doc. Ent. 51 at 2.

**2.** On January 17, 2007 defense counsel sought concurrence from plaintiffs regarding the instant motion. Doc. Ent. 51 at 2. On January 18, 2007, "plaintiffs agreed to supplement their answers, as best they could at that time, to the interrogatories initially served." Doc. Ent. 45 at 4. According to defendants, plaintiffs' counsel "agreed to sign an order requiring answers and complete responses within 14 days[,]" on January 18, 2007; however, plaintiffs' counsel has refused to sign the January 19, 2007 proposed order. Doc Ent. 40 at 6.

On February 2, 2007, defendants filed a motion to compel answers and complete responses to first set of discovery requests. (Doc. Ent. 40). Defendants request that the Court overrule plaintiff's counsel's objections and compel plaintiffs to "provide complete answers to Defendants' Interrogatories" and "respond fully to Defendants' Requests for Production of Documents." Doc. Ent. 40 at 2. Defendants argue that (A) "Plaintiffs have not provided any answers at all, and their Objections are devoid of merit[,]"[4] (B) "Interrogatories 1 and 2 seek the facts underlying Plaintiffs' purported lost sales and profits due to an alleged trademark violation[,]" (C) "Interrogatory 3 seeks an itemization of Plaintiffs' alleged damages due to

---

[4]In part, this argument is based upon the absence of a party representative signature on plaintiff's December 28, 2006 answers to interrogatories. Doc. Ent. 40-3 at 6. However, the February 9, 2007 supplemental answers to defendants' first interrogatories are signed by Robert Craig of Guardian. Doc. Ent. 45-4.

7

Defendants' use of the phrase 'Virtually There Care[,]'" (D) "Interrogatory No. 4 seeks a list of customers that moved or transferred business from Plaintiffs' company to Defendants' company during a specified period of time[,]" (E) "Interrogatory No. 5 seeks an itemization of the damages allegedly associated with Counts IV and V of Plaintiffs' Complaint[,]" (F) "Document Requests 1 and 2 seek documents referring or relating to the Defendants[,]" and (G) "Document Requests 3 and 4 seek documents that support Plaintiffs' claimed damages in Counts I-V of the Amended Complaint." Doc. Ent. 40 at 6-13.

On or about February 9, 2007, plaintiffs served supplemental answers to defendants' first interrogatories. Doc. Ent. 45-4. As to interrogatory No. 3, plaintiffs state that "they are currently unable to calculate or itemize the damage seeking to recover because of defendants' use of the phrase 'Virtually There Care,' Further, plaintiffs state that damages that may be unrecoverable under the law may be based on items not necessarily within the plaintiffs knowledge at this time. This would include damages based upon the defendants' profits." Doc. Ent. 45-4. As to interrogatory No. 4, plaintiffs state that they "are aware of two individuals who have cancelled or terminated business from Guardian Medical and moved or transferred its medical monitoring business to CST. They are Francine Prough and a Mrs. Barnthouse. Further, plaintiffs state that customers' cancellation or termination of business is not necessarily the sole basis of damages allowed under the Lanham Act being 15 USC Sec. 1117 et. seq. Rather, damages may be based upon defendants' profits and attorney fees." Doc. Ent. 45-4. Finally, with regard to Interrogatory No. 5, plaintiffs stated:

> . . . damages suffered by the plaintiffs as a result of the defendants' violation of his non-compete and non-solicitation agreement are not easily calculable. However, they would include damage to the plaintiffs' good will and/or dilution and interference with the plaintiffs' existing client and referral sources including

8

>   the defendants' improper and illegal use of the plaintiffs' trademark 'Virtually there Care' mark.  Further, the plaintiffs have suffered damages in relation to the interference and productivity of various employees including Thomas Reddy, Jeff Kipp and Diane Gooding, whom defendants knew were under separate non-compete agreements.  The terms of separate non-complete agreements and understood that interference with their productivity due to his solicitation of these employees as well as the loss of these employees' production when they are solicited from their ongoing employment with the plaintiffs.  Plaintiffs have also suffered damages relating to retraining of individuals and to replace the functions formally performed by the employees identified.  Finally, the plaintiffs have suffered damages of attorney fees and costs necessitated to obtain appropriate orders for enforcing the employees non-compete and non-solicitation clauses.  Plaintiffs cannot at this time identify specific dollar amounts associated with those damages[.]

Doc. Ent. 45-5.

On February 20, 2007, plaintiffs filed a response requesting that the Court deny defendants' motion "as there is no basis for the requested relief."  Doc. Ent. 45 at 3. Plaintiffs contend that they "have responded to the interrogatories to the full extent possible given the current state of discovery."  Doc. Ent. 45 at 4.

Defendants filed a reply on March 8, 2007.  (Doc. Ent. 51).  With respect to the interrogatories, defendants argue that the answers to Interrogatory Nos. 3, 4 & 5 are not acceptable, and they describe the type of information they are seeking in response to these questions.  Doc. Ent. 51 at 2-4.  With respect to the document requests, defendants claim, "[p]laintiffs have not provided a single document," and their response does not address the requests for production of documents.  Defendants conclude that plaintiffs have abandoned the topic of document requests and "should be deemed to have waived their objections to defendants' document requests."  Doc. Ent. 51 at 5.

**3.** I agree that defendants are entitled to the information sought by these discovery requests, but I am mindful of plaintiffs' representations that "it is difficult (if not impossible) for plaintiffs

to provide more information because defendants have not yet provided any discovery to plaintiffs." Doc. Ent. 45 at 2. Therefore, defendants' request for an order requiring full and complete answers to Interrogatories 3, 4 & 5, as well as requiring production of "all documents responsive to Defendants' Requests for Production of Documents," or an unequivocal admission "that no such documents exist[,]" Doc. Ent. 51 at 5, is granted; however, consistent with my ruling below, plaintiff's obligation to respond is subject to defendants' provision of documents to plaintiffs as outlined in the following section of this opinion.

### D. Plaintiffs' motion to compel answers to interrogatories and production of documents is granted in part.

**1.** On January 25, 2007, plaintiffs served first requests for production of documents to defendants (Nos. 1-9) and first set of interrogatories to defendants (Nos. 1-5). Doc. Ent. 53-3. Plaintiffs requests for production of documents are as follows:

1. Please produce copies of all financial statements prepared by or on behalf of CST.
2. Please produce any business plans, marketing plans, proposals or other documents relating to the business model and/or efforts to be expended on behalf of Jeffery S. Prough or CST that may have been designed to be presented to any, or that was actually presented to any actual or potential investor.
3. Please produce any letters of intent between Jeffery S. Prough and/or CST and any other entity produced between the years 2003 and the present.
4. Please produce copies of any and all letters of credit issued to CST and/or Jeffery S. Prough.
5. Please produce any and all documents, notes, memorandum, et-mail, etc., reflecting any attempts to obtain funding by CST since 2004.
6. Please produce any and all correspondence, including all electronic correspondence, with Jeffery S. Prough and/or CST and the following: [Brian Gannon; Dunrath Capital; Tom Cox; Seneca Health Partners; Ken Hooten; Concentric Equity Partners; Jay Rosen and HMA Capital][.]
7. The name, current residential address and telephone number of each and every employee, current or former of [CST] who made sales calls on any customers or potential customers, referral sources or ultimate end users of

10

|     |     |
| --- | --- |
|     | CST's products and services during the year 2006.[5] |
| 8.  | Please produce any and all financial statements [prepared] by or for CST since January 1, 2004.[6] |
| 9.  | Please produce copies of all tax returns and accompanying schedules and attachments filed by CST since January 1, 2005. |

Doc. Ent. 53-3. Furthermore, plaintiffs' interrogatories state:

1. Please detail any and all conversations between Jeffery S. Prough and any representative of the following entities [Brian Gannon, Representatives of Dunrath Capital, Tom Cox, Representatives of Seneca Health Partners, Ken Hooten, Representatives of Concentric Equity Partners, Jay Rosen and Representatives of HMA Capital] since 2003. Please include in your answer the date of the conversation, the names and current addresses of all persons present or participating in the conversation and a detailed description of the substance of the conversation[.]"
2. Please identify any auditors, accountants, or other professionals who have reviewed the financial statements of CST.
3. Please identify any entity or person that was approached, solicited or asked at any time to invest in or provide funding for CST. Please include the person or entity's name, current address and phone number.
4. Please identify each and every person or entity to whom CST has sold goods or services. Please include a description of the goods or services provided, the amount received by CST as a result of the sale, the person or entity's name, current address and phone number.
5. Please identify each and ever[y] prospective customer or referral source including any government entity CST, its agents, servants or employees have contacted. Please include the name address and phone number of each entity identified as well as the name of any and all individuals identified with any organization ro corporate entity as 'contacts'.

Doc. Ent. 53-3.

On February 26, 2007, defendants served responses to plaintiffs' first requests for production of documents to defendants and first set of interrogatories to defendants. Doc. Ent.

---

[5]During the hearing, it was stated that the information requested by request for production No. 7 will be disclosed in another case.

[6]During the hearing, plaintiffs' counsel acknowledged the similarity between request for production Nos. 1 and 8.

11

53-4. In these responses, defendants object on the bases of relevance, confidentiality, proprietary, over breadth and burdensomeness. However, as to Request No. 7 and Interrogatory Nos. 4 and 5, defendants state that CST did not have sales prior to October 4, 2006 [one year from the date of plaintiff's termination of employment].[7]

**2.** On March 1, 2007, plaintiffs sought concurrence (by correspondence) in the instant motion. Doc. Ent. 53 at 3. On March 18, 2007, plaintiffs filed a motion to compel answers to interrogatories and production of documents. (Doc. Ent. 53). They request that the Court grant their motion to compel answers to interrogatories and document production and award plaintiffs reasonable expenses associated with litigation of this motion. Doc. Ent. 53 at 7. Plaintiffs suggest that defendants can request Fed. R. Civ. P. 26(c) protection for confidential information. Doc. Ent. 53 at 15. Citing 15 U.S.C.A. § 1117(a), plaintiffs contend that "Guardian is entitled to recover defendants' profits, Guardian's damages, and the costs of the action." Plaintiffs claim that "Guardian's discovery requests are appropriate not only to establish damages, but also liability." Doc Ent. 53 at 16.[8]

On March 30, 2007, defendants filed a response requesting that the Court deny plaintiffs' motion. (Doc. Ent. 58). Defendants argue that "the Court [should] sustain an objection to discovery that is irrelevant and not reasonably calculated to lead to admissible evidence[.]" Doc. Ent. 58 at 4. Defendants argue that "none of the requested items are relevant to any of the claims

---

[7]Page four (4) of this exhibit is missing from the record. Presumably, it contains the responses to Request No. 9 and Interrogatories Nos. 1 & 2. However, these three discovery requests do not seem to be at issue in plaintiffs' motion. Doc. Ent. 53 at 13.

[8]On March 19, 2007, David Crawford, Guardian's President, was deposed. Doc. Ent. 58 at 7, Doc. Ent. 58-5.

12

in this case. Doc. Ent. 58 at 6.

Based upon plaintiffs' discovery responses, defendants claim that "Guardian has not and cannot even offer a theory as to how any of the requested information is relevant to the non-compete claim." Furthermore, based upon plaintiffs' instant motion, defendants claim that "Guardian does not claim any of the discovery is relevant to the non-compete claim." Doc. Ent. 58 at 7.

According to defendants, plaintiffs' "sole and complete explanation of relevance is the simplistic argument that CST's *financial statements* are relevant to the trademark claim." Doc. Ent. 58 at 7. "Guardian's simplistic arguments as to the CST financials fail to recognize that there is no causal connection of any kind between the one time alleged use of the phrase 'Virtually There Care' and CST's sales." Doc. Ent. 58 at 7. Defendants contend that "[t]here has been no showing at all that the one-time alleged use of the phrase 'Virtually There Care' has harmed Guardian in any way, or has allowed CST to sell any services or goods to any person." Doc. Ent. 58 at 8. Defendants also state that "Guardian has yet to even offer a possible theory to explain how the one-time use of the phrase 'Virtually There Care' in the program at the n4a Conference translated into one penny of revenue for CST. Without that showing, all of Guardian's requests are a pure fishing expedition, including the financial statements." Doc Ent. 58 at 9.

During the April 2, 2007 hearing, the Court was provided with copies of Nolan's deposition exhibit numbers 1-6, which appear to consist of invoices from RIIS LLC (Nolan's

company)[9] to Future II (a computer consulting firm owned by Jim Barnhouse, defendant Prough's friend)[10] regarding salary / expense for users Nolan and Reddy. On April 3, 2007, the day following the motion hearing, defendants filed a supplemental brief in opposition to plaintiffs' motion to compel answers to interrogatories and production of documents. (Doc. Ent. 59). Attached to the filing is the transcript of Godfrey Nolan's March 27, 2007 deposition in *Guardian Alarm Company of Michigan v. Reddy*, Oakland County Circuit Court Case No. 06-077031-CK. Doc. Ent. 59-2. Defendants conclude that "[p]laintiffs' reliance on the Nolan transcript to establish the relevance of the disputed discovery at issue before this Court is at best unsupported." Doc. Ent. 59 at 2. Specifically, defendants note Nolan's testimony that on or about September 26, 2006, Reddy stopped working for defendant Prough. Doc. Ent. 59 at 3, 59-2 at 18 p. 60. According to defendants, "[p]laintiffs are essentially arguing that they should get unrestricted access to the books and records of CST because they *might* be able to find something relevant." Doc. Ent. 59 at 3.

On April 11, 2007, plaintiffs filed a reply to defendants' supplemental response brief opposing plaintiffs' motion to compel. (Doc. Ent. 61). Attached to the filing is the transcript of Godfrey Nolan's March 27, 2007 deposition (Doc. Ent. 61-3); the September 25, 2006 opinion and order of Oakland County Circuit Court Judge Wendy Potts in *Guardian Alarm Co. Of Michigan v. Reddy*, Case No. 06-077031-CK, granting Guardian's motion for injunctive relief (Doc. Ent. 61-4); and excerpts of Thomas Reddy's April 4, 2007 deposition (Doc. Ent. 61-5).

---

[9]RIIS, L.L.C, makes "software for primarily telephone call centers," and places "people in call centers." Doc. Ent. 59-2 at 5 p. 6. According to Nolan, the work RIIS did for Tom Reddy "was with Future II, but ultimately with CST." Doc .Ent. 5902 at 5 p. 7.

[10]Doc. Ent. 61 at 4.

14

Nolan testified that between March and June, Prough informed him (Nolan) that Reddy's non-compete was not an issue. Doc. Ent. 61-3 at 50-51. Nolan also testified that he met Reddy in July of 2006 through defendant Prough. Doc. Ent. 61-3 at 29. Nolan further testified that defendant Prough wanted Reddy to set up the call center. Doc. Ent. 61-3 at 46. Also, Nolan's belief that Reddy has stopped was based upon the fact that Reddy told Nolan he had stopped. Doc. Ent. 61-3 at 63.

Plaintiffs argue that "Prough was aware of Reddy's non-compete." Doc. Ent. 61 at 3. Plaintiffs claim that payments went "upstream from RIIS to Future II and then to Prough, and the money went downstream from Prough to Future II and then to RIIS." Doc. Ent. 61 at 4. According to plaintiffs, "[t]he point of this artifice was to avoid the appearance that Reddy was violating his non-compete . . . and to avoid the appearance that Prough was acting in concert with Reddy for this purpose[.]" Doc. Ent. 61 at 4. Furthermore, "the double-layered billing scheme was continued to make it appear that Reddy and Prough were not violating Judge Potts' injunctive order." Doc. Ent. 61 at 4. Plaintiffs contend that several statements by Nolan "undermine CST's position that Reddy directly or indirectly stopped working at the CST monitoring center[.]" Doc. Ent. 61 at 6. Furthermore, Reddy testified that he "was hired to plan and design the network and the infrastructure and the telecommunications[,]" the set up of which would result in a central monitoring station. Doc. Ent. 61-5 at 59.

On April 12, 2007, defendants filed a second supplemental brief in opposition to plaintiffs' motion to compel answers to interrogatories and production of documents. (Doc. Ent. 62). Attached to the filing are excerpts of Thomas Reddy's April 4, 2007 deposition (Doc. Ent. 62-2). Specifically, defendants cite Reddy's testimony that, after the injunction was entered, he

15

stopped working for CST and did not "in any way provide consulting or any other kind of services to CSI[.]" Doc. Ent. 62-2 at 52-53. Defendants contend that "[t]he fact that Reddy's employer may have invoiced the pre-injunction work post injunction does not suggest that Reddy himself continued to work for CST after the injunction[.]" Doc. Ent. 62 at 2. Defendants also contend that "Guardian never bothers to give the slightest hint as to how any of the depositions, quotes or arguments it makes in the April 11, 2007 brief are relevant to the discovery issue before this Court." Doc. Ent. 62 at 3.

**3.** As previously discussed, the remaining claims in this case are (I) trademark infringement (with respect to the "Virtually Care There" mark), which specifically mentions 15 U.S.C. § 1125(a); (II) unfair competition, which specifically mentions 15 U.S.C. § 1125(a) and Mich. Comp. Laws § 429.44;[11] (III) dilution, which specifically mentions Lanham Act § 43(c) [15 U.S.C. § 1125(c)]; (IV) violation of non compete agreement and (V) violation of non solicitation. Defendants rely upon the date of October 4th, arguing that even if defendant Prough had signed the covenant not to compete, it would have expired on October 4, 2006 - one year from the date of his October 4, 2005 termination of employment. Defendants argue that, even assuming the covenant not to compete was valid, "Guardian has no possible claim for damages of any kind as it was not and could not be injured in any way from the activities of a company with no sales or revenue during the disputed non-compete period." Doc. Ent. 58 at 7.

Plaintiffs argue that the October 4th date is a fiction. I agree. As Judge Borman stated in his October 19, 2006 opinion and order denying plaintiffs' motion for a preliminary injunction,

---

[11]"Nothing contained in this act shall adversely affect the rights or the enforcement of rights in marks acquired in good faith at any time at common law." Mich. Comp. Laws § 429.44 ("Common law rights").

16

"[i]t is undisputed that Defendant has been in the process of setting up [CST], searching for possible investors, and maintaining a company website, all within the period covered by the alleged non-compete agreement." Doc. Ent. 25 at 17.

My conclusion is best illustrated by an example. The covenant not to compete at issue in this case provides that the employee agrees "for a period of one (1) year from the date of . . . termination from Guardian, not to solicit or attempt to solicit or induce employees of Guardian to leave their employ and to work directly or indirectly for one with [the employee] or another employer." Doc. Ent. 3-5 at 1. Count V of plaintiff's amended complaint alleges that defendant Prough "solicited plaintiffs' employees including Tom Reddy, Jeff Kipp, and Diane Gooding to leave their employment with plaintiffs." Doc. Ent. 9 at 10 ¶ 56.

Therefore, plaintiffs' request for an order granting their motion to compel answers to interrogatories and document production, Doc. Ent. 53 at 7, is granted. However, plaintiffs' request for reasonable expenses associated with litigating this motion, Doc. Ent. 53 at 7, is denied. I conclude that "other circumstances make an award of expenses unjust[,]" Fed. R. Civ. P. 37(a)(4)(A), based upon my conclusion that defendants' resistence to providing the requested discovery was based upon its dedication to a relevancy cut-off date of October 4, 2006, a position with which I disagree but regarding which I do not find worthy of sanctions at this time, and based upon the conditional nature of the relief awarded based upon the April 2, 2007 oral argument.

## II.   ORDER

Consistent with the foregoing, defendants' motion to compel answers and complete responses to first set of discovery requests (Doc. Ent. 40) is GRANTED and plaintiffs' motion to

compel answers to interrogatories and production of documents (Doc. Ent. 53) is GRANTED IN PART.  Defendants shall supply plaintiffs with substantive responses to plaintiffs' January 25, 2007 interrogatories (Nos. 1-5) and requests for production of documents (Nos. 1-9) within twenty-one (21) days of the date of this order.  Upon receipt of this information, plaintiffs will have twenty-one (21) days to respond to defendants' November 28, 2006 interrogatories (Nos. 3-5) and requests for production (Nos. 1-4).  Plaintiffs' request for reasonable expenses incurred in litigating their motion to compel is DENIED.

    IT IS SO ORDERED.

    The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten (10) days from the date of service of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

Dated: 4/17/07

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on April 17, 2007.

s/Eddrey Butts  
Case Manager